FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

AUG 15 2000

JAMES W. McCORMACK, CL
By:_____
                        DEP

IN THE UNITED STATES DISTRICT COURT
OF THE EASTEREN DISTRICT OF ARKANSAS
WESTERN DIVISION

CAROL DZIGA                                                              PLAINTIFF

V.         CASE NO. 4-00 CV00626 SMR

NCO FINANCIAL SYSTEMS, INC., d/b/a
DEALER FINANCE, MIKE RIELLY and JOHN DOE                DEFENDANTS

AFS:  The Corporation Company
      425 W. Capitol Avenue, Suite 1700
      Little Rock, Arkansas

This case assigned to District Judge _____EASON_____
and to Magistrate Judge _____CAVANEAU_____

## COMPLAINT

COMES the Plaintiff, Carol Dziga, by and through counsel, Harrill & Sutter, P.L.L.C., and for her complaint, states:

### PARTIES AND JURISDICTION

1.   Plaintiff, Carol Dziga, is a resident of Pulaski County, Arkansas.

2.   Defendant NCO Financial Systems, Inc. (NCO) is a foreign corporation authorized to do business in Arkansas. Defendant, Mike Reilly, an employee of NCO, is and has been at all relevant times a debt collector, as defined by the Federal Fair Debt Collection Practices Act 15 U.S.C. § 1692a(6). John Doe is the corporation or person who actually repossessed the vehicle at issue.

3.   This action is brought for violations of the Fair Debt Collections Practices Act (FDCPA), conversion and wrongful repossession. Personal jurisdiction and venue are proper. This Court has subject matter jurisdiction for the FDCPA claim under 28 U.S.C. § 1331 and supplemental subject matter jurisdiction over the conversion and wrongful repossession claims under 28 U.S.C. § 1367.

1



## GENERAL ALLEGATIONS OF FACT

4. Carol Dziga was the named party on a car note. She financed the vehicle through Mercantile/Firstar Bank, and she was to receive possession of the title when the car was paid off.

5. Plaintiff believed that the vehicle was paid off in September of 1999, but her ex-husband was responsible for making the payments as a result of an agreement. The Plaintiff's ex-husband believed that he had paid the car off in September, but it is possible that he missed one or two payments, but no more.

6. The Plaintiff's ex-husband does have a receipt indicating that he made the final payment in September of 1999.

7. Around November of 1999, the Plaintiff checked with Mercantile/Firstar Bank concerning the state of her loan. She was informed that there were fees owed in the amount of $60.00 to $75.00. Plaintiff got the bank to waive the fees, and Plaintiff had no further contact with the Bank or its representatives until April of 2000.

8. On April 5, 2000, Plaintiff was at home sick from work when she received a call from Mr. Reilly around 12:30 p.m. Being extremely nauseous and sick, the Plaintiff pretended to be a roommate and asked if she could take a message for "Carol Dziga" as she had no desire to speak to anyone at that time. The individual, believing her to be a third party, identified himself as Mike Reilly from Dealers Finance. He said that he needed to send a Sheriff with a warrant to arrest Carol Dziga at work and was trying to find out where she lived.

9. Still under the pretense of an uninterested third party, the Plaintiff asked Mr. Reilly why he was going to send a Sheriff to arrest her. Reilly stated that he was trying to repossess a 1994 Chevy Cavaliar, which he could not locate and that he was going to put a warrant out for Carol Dziga. At that time, the Plaintiff told Mr. Reilly that the car had been paid off.

10. Reilly then stated that it was possible because this had happened before. However, he stated that all he had was an amount owed of $719.00.

11. On April 12, 2000, Mr. Reilly called again and told Plaintiff that he wanted $700.00 or he would repossess the car and have her arrested at her work place.

12. In late April, the Plaintiff and her ex-husband along with Mr. Reilly reached an agreement in which they would pay $500.00 to clear the debt on the Cavelier. The Plaintiff's ex-husband went to a bank at Park Plaza and paid $250.00. Their daughter, who actually used the vehicle, also went to a bank in Conway and paid the remaining $250.00 that day. Both kept their receipts. The next day, Mr. Reilly called the Plaintiff's daughter and informed her that the title is supposed to be sent to them. However, the title did not arrive for the next three weeks.

13. Shortly thereafter, the Plaintiff's daughter was leaving for work one morning and her vehicle was gone. She subsequently called Mr. Reilly, and he informed her that there was no record of the Plaintiff paying the $500.00. Therefore, Mr. Reilly ordered the car repossessed. However, the Plaintiff has both of the receipts, totaling $500.00, paid on the same day that the agreement was reached.

14. The Plaintiff then called Mr. Reilly and asked, "If Mr. Reilly had ever heard of Wrongful Repossession?" He stated that "Yes, I have heard of Wrongful Repossession and that it is okay for your daughter to come get the car." Since the car was repossessed from Conway and Mr. Reilly had it in Little Rock, the Plaintiff instructed Mr. Reilly to bring the car back to her daughter as soon as possible. Mr. Reilly stated that he would return the vehicle in 20 minutes, but he failed to return the vehicle for 3-4 hours.

15. Upon receiving the vehicle back, the Plaintiff noticed several damaged areas on the exterior of the vehicle and several items, which were in the vehicle missing.

16. All of Defendant's actions have been willful, wanton, and reckless, such plaintiff is entitled to punitive damages.

## COUNT I – FAIR DEBT COLLECTION PRACTICES ACT

16.     Plaintiff realleges the foregoing as if fully set out herein.

17.     Defendants violated 15 U.S.C. §1692(b) by speaking with an individual that they believed to be a third party for the purpose of acquiring location information and were not expressly requested to identify their employer. Likewise, believing that they were communicating with an uninterested third party, the Defendant stated that the Plaintiff owed a debt. Finally, the Defendant believing that they were communicating with an uninterested third party, communicated with such person more than once without being requested to do so by the third party.

18.     Defendants violated 15 U.S.C. 1692d(5) by repeatedly and continuously engaging in telephone conversations with the intent to annoy, abuse, harass, or oppress the Plaintiff in connection with the collection of a debt.

19.     The Defendants violated 15 U.S.C. 1692e(4) by representing or implicating that nonpayment of the debt will result in arrest or imprisonment of the Plaintiff or the seizure, garnishment or attachment of the Plaintiff's property or wages.

20.     The Defendants violated 15 U.S.C. 1692e(11) by failing to advise the Plaintiff upon the initial oral contact of her mini-Miranda rights and by failing to send Plaintiff notice with five days after receiving the debt for collection. In so doing, the Defendant failed to advise during the initial oral communication that the debt collector was attempting to collect a debt and that any information obtained will be used for that purpose.

21.     As a result of Defendants intentional and wrongful acts, Plaintiff has suffered mental anguish, damage to reputation, embarrassment, humiliation, statutory damages, loss of credit, costs, reasonable attorney fees and all other relief this Court deems proper.

## COUNT II – CONVERSION

21. Plaintiff realleges the foregoing as if fully set out herein.

22. Defendants acted in derogation of the Plaintiff's possessory rights and wrongfully exercised or assumed authority over the Plaintiff's red, 1994 Chevrolet Cavaliar, which Plaintiff paid off and is identified by VIN# 1G1JC1447R7251772.

23. Upon repossession of the Plaintiff's vehicle by Mr. Reilly, the Plaintiff contacted Mr. Reilly and demanded the return of the vehicle. Mr. Reilly stated that he would return the vehicle in 45 minutes. However, he did not return the vehicle for 3-4 hours.

24. When the Defendants repossessed the vehicle from the Plaintiff, Plaintiff was not in default according to the agreement between the Plaintiff and Defendant. Plaintiff is informed and believes and therefore alleges that Defendant failed to record the last payment made by Plaintiff to Defendant. The installments made by Plaintiff to Defendant on April 12, 2000 were not credited to the Plaintiff's account at the time Defendant repossessed the vehicle.

25. At the time Defendant, through John Doe, repossessed the vehicle, Plaintiff was the owner and entitled to the immediate possession of it and at the time the Defendant, through John Doe, repossessed the vehicle, the vehicle was of the reasonable value of $7,000.00.

26. As a direct and approximate result of Defendants willful, intentional and unlawful acts, the Defendant converted the Plaintiff's vehicle and in the course of this conversion damaged the exterior of the vehicle and lost personal property contained within the vehicle. Plaintiff is therefore entitled to recover property damage from the Defendant.

27. The Plaintiff demands damages for the conversion of the vehicle; damages for the loss of the contents of the vehicle; damages to the exterior of the vehicle; punitive damages; reasonable attorneys fees, and all other such relief as the Court may deem proper.

## COUNT III – WRONGFUL REPOSSESSION

28.   Plaintiff realleges the foregoing as if fully set out herein.

29.   The Plaintiff is confident that all payments were made upon Defendant demanding $719.00. However, the Plaintiff agreed to pay the additional sum of $500.00 to clear all debts in order to avoid any conflict with the Defendants.

30.   In late April of 2000, Defendant, Mike Reilly, acting within the course and scope of his employment, agreed to accept payment for $500.00 to discharge all debt. Plaintiff made the payment of $500.00 that same day as agreed between Plaintiff and Defendant.

31.   Nevertheless, Mr. Reilly, acting within the course and scope of his employment, unlocked and broke into Plaintiff's 1994 Chevrolet Cavaliar and took and converted the vehicle to Defendant's own use and drove the vehicle from Plaintiff's residence in Conway, Arkansas to Defendant's store lot in Little Rock, Arkansas.

32.   As a result of Defendant's above described acts, Plaintiff has been deprived of the use and enjoyment of the vehicle and expended funds in order to locate the vehicle. As a further result, Plaintiff has suffered humiliation, lost wages, distress and embarrassment.

WHEREFORE, Plaintiff demands judgment against the Defendant for compensatory damages, punitive damages, statutory damages under the FDCPA of $1,000.00 per violation, costs, attorney fees, for a jury trial and all other relief this Court deems proper.

Respectfully submitted,

HARRILL & SUTTER, P.L.L.C.
Attorneys at Law
Post Office Box 26321
310 Natural Resources Drive
Little Rock, Arkansas 72221-6321
501/224-1050; Facsimile 501/223-9136
Attorneys for the Plaintiff

By: _____
L. Oneal Sutter, Ark. Bar No. 95031

F:\DOC\DZIGA\CPLT